In re the Mortgaging of Certain Real Estate of The Wooster Baptist Temple: Nussbaum, Appellant, *v.* The Wooster Baptist Temple, Appellee.

(No. 1124—Decided June 24, 1953.)

*Messrs. Critchfield, Critchfield, Critchfield & Johnston,* for appellant.
*Messrs. Funk & Funk,* for appellee.

HUNSICKER, J.   This appeal on questions of law from the Common Pleas Court of Wayne County, Ohio, has been submitted to this court on the transcript of the docket and journal entries and the briefs of counsel.

The Wooster Baptist Temple of Wooster, Ohio, an incorporated religious society, filed its petition, pursuant to the provisions of Section 10051 *et seq.,* General Code, seeking authority to mortgage land and buildings owned by the church.   Millen Nussbaum, who had an action pending in the same court for the balance he claimed was due him for constructing the church, filed a motion in the trial court asking the right to file an answer to this petition.

The trial court refused to grant Nussbaum permission to intervene in the action, and denied him the right to file his answer, or to be heard in the proceeding.   The court granted the petition of the church, and entered a judgment giving authority to the petitioner, The Wooster Baptist Temple, to mortgage the church property.   The court also approved the report of the church trustees, which report stated that they had executed the mortgage for which authority was given.

Nussbaum brings an appeal to this court on questions of law, saying that:

"* * * the Common Pleas Court of Wayne County erred * * * to the prejudice of the substantial rights of appellant.

"(1) In overruling appellant's motion, denying him the right to file an answer or pleading, and denying him the right to be heard in the cause."

There have been few reported cases wherein the precise question herein has been discussed. Statutes in other states, although generally similar to Ohio statutes, are difficult to reconcile with the specific wording of our law. We do, however, find some cases in other jurisdictions which discuss the problem we have before us.

In the case of *In re Ash* (1918), 82 W. Va., 516, 96 S. E., 797, the court said:

"1. In a proceeding by church trustees pursuant to section 9, chapter 57, of the Code [section 3302], to sell the church property owned and held in fee simple, an adjoining land owner, as such, though holding under title derived from a common source, has no right to intervene therein or to be heard in opposing such sale."

In a later case, *Samples* v. *United Fuel Gas Co.* (1925), 100 W. Va., 441, 130 S. E., 670, the Supreme Court of Appeals of West Virginia did permit a party to intervene in the proceedings to lease church lands after the trial court had refused such party a right 'o' intervene. The intervening party in that case had an interest by way of prior leases, which the court held could be protected in the proceedings to lease filed by the church trustees.

Under the present (1949) Code of West Virginia, there is now no provision for application to be made to the court for authority to sell church lands, but the earlier Code sections did provide for court approval. See: Revisers' Note to Section 3497, and Section 3498, West Virginia Code of 1949.

In the case of *In re St. Michael's Church of Atlantic City* (1909), 76 N. J. Eq., 524, 74 A., 491, wherein

an action was brought under authority of the statute to sell certain lands devised to the church, and in which case a claimant was refused the right to intervene, the court said, at p. 528 of 76 N. J. Eq., p. 492 of 74 Atlantic Reporter:

"There is another reason why the petitioner cannot intervene in this cause, and that is, because no provision is made in the act under which these proceedings are taken for letting in anybody to defend. This being so, if Catherine Bloomer has any rights, they will not be affected by any order or decree that may be made in this cause."

The statute under which that case was brought is now found in New Jersey Statutes Annotated (Permanent Edition), 15:14-9. It should be noted, too, that there is now no general statutory restriction in New Jersey on encumbering church property, and apparently no requirement for prior court approval. The present statutes relate principally to the sale of property held in trust for specific purposes.

In the state of New York the statutes are very explicit with respect to the rights and duties of religious corporations so far as their owning, encumbering and selling lands is concerned. These statutes are found in Book 50 of McKinney's Consolidated Laws of New York. Section 12 sets out the present procedure employed in New York. Under the provisions of an earlier statute, in the case of In re Westminster Presbyterian Church, 137 App. Div., 301, 121 N. Y. Supp., 1039, and 168 App. Div., 823, 154 N. Y. Supp., 361 (an action to sell church property), the trustees of the Presbytery of New York intervened by permission of the court. In that case there was involved a question of title to the church property.

We have examined the statutes of many states relating to religious societies and the right to encumber

their property, but we have been unable to find either uniformity in the statutes or any case in those several jurisdictions sufficiently helpful to be persuasive.

The Ohio cases cited by counsel (*In re Baptist Church*, 32 N. P. [N. S.], 491, and *Sullivan* v. *Columbiana County Agricultural Society*, 23 N. P. [N. S.], 49, 31 O. D. [N. P.], 213), do not assist us appreciably.

In the case of *Wilansky, Trustee*, v. *Ansche Polen Congregation*, 12 Ohio App., 301, 31 C. C. (N. S.), 526, the court, in commenting on Section 10051, General Code, said at p. 303:

"The proceeding in question was filed under the provision of Section 10051, General Code, which is the authority for the sale of property belonging to a religious society. The right of the trustees to file the petition is controlled by a majority of the members of the society. Every step in the proceeding to accomplish the purpose of sale is especially provided for by the statute. It can in no sense be considered an *ordinary* proceeding. It is not a proceeding whereby 'a party prosecutes another.' It was a proceeding not known to the common law, nor to equitable procedure, and is purely a creature of statute. If the trustees were agreed in making the application, and were a unit as petitioners, no adversary parties were necessary, yet they are required to proceed under Section 10051 of the Code to convey a good title. The only service required was to cause notice of the pendency of the petition to be published in some newspaper in the county where the real estate was situated, for four consecutive weeks before the application was heard. It is only in the sense of division on the part of the trustees that it could be considered as an adversary proceeding."

And at p. 304, the court further said:

"The proceeding herein is not an ordinary proceeding. No summons is required to be issued. No party

prosecutes another for the redress of a legal wrong. It is not the enforcement of a legal right. It is, in effect, but asking authority to proceed in a certain way directed by statutes, to effect a sale of church property, that title may be conveyed. It is not the punishment of a public offense. The proceeding lacks the elements contained in Section 11237, General Code, defining an action.''

The proceeding herein to mortgage the church property is not an action as that term is defined in the statutes, it is not adversary in character, and, except where there is a division within the board of trustees, it is not necessary to serve a summons. The notice of the application for authority to mortgage required to be published is, at least in part, to give notice of the acts of the congregation to those members who were not present when the authority to mortgage was voted.

In the instant case, Nussbaum is not a member of the congregation. His claim is that at some future time he may obtain a judgment against the church, and he says that his position as a judgment creditor will then be impaired by the mortgage the church executes.

The statute under which this action is brought (Section 10051, General Code), reads in part as follows:

''If upon the hearing of the case it appears that such sale, exchange, lease or incumbrance is desired by the members of the society or association and that it is *right and proper* that authority be given to accomplish it, the court may authorize the trustees or other officers of the society * * * to * * * incumber such real estate in accordance with the prayer of the petition and *upon such terms as the court deems reasonable.*'' (Emphasis ours.)

What is meant by the phrase ''right and proper''? Does it mean ''right and proper'' for the congregation only, or ''right and proper'' also from the standpoint of those who have claims against the religious society?

The courts do not interfere in matters of faith, but they have always asserted their right to intervene in the temporal affairs of religious societies. 45 American Jurisprudence, Religious Societies, Section 40, and cases there cited.

Courts, under the usual day-by-day affairs of business concerns, do not step into their operations and regulate the borrowing of money. If the court, in an action under Section 10051, General Code, were open to every person who had a claim against a congregation, it would in effect be setting up the court as a clearing house and business manager of church property. No business concern must ask those who claim, or might claim, to be creditors, for permission to borrow money.

Nussbaum, in the instant case, cannot claim that he has a present interest in the real estate owned by the church by reason of the action he has pending in that court against the Wooster Baptist Temple. Under the rule previously announced by this court, "An action for money only is not within the doctrine of *lis pendens.*" *Stone* v. *Equitable Mortgage Co.,* 25 Ohio App., 382, 158 N. E., 275, paragraph one of syllabus.

We therefore determine that the phrase "right and proper," as used in the statute, does not contemplate that persons in the situation of Nussbaum are necessary parties to the proceeding to mortgage church property.

The trial court did not commit error prejudicial to the substantial rights of Nussbaum when it overruled his motion to be made a party in the proceeding and denied to him "the right to be heard in the cause."

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.